# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETRA PRESBYTERIAN CHURCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | No. 03 CV 1936 |
| VILLAGE OF NORTHBROOK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Petra Presbyterian Church bought land in Northbrook, Illinois, to open a church. The problem for Petra is that its land is in the middle of an industrial park where churches aren't allowed. Nevertheless, Petra still wants to locate in the industrial park, and has sued Northbrook claiming that the village's zoning code violates federal and state laws, as well as the Constitution. The parties filed cross-motions for summary judgment. For the reasons that follow, the court denies Petra's seven motions for partial summary judgment, grants Northbrook's motion for summary judgment on Petra's federal claims, and declines to exercise jurisdiction over the remaining state law claims.

## BACKGROUND

The following is culled from the parties' statements of fact and exhibits. Petra is a Presbyterian church with a predominantly Korean congregation. It conducts its worship services and other church-related functions like weddings and baptisms in space rented from a Lutheran church in Glenview, Illinois.

For the past ten years, Petra has been searching for a building of its own. Unable to find an existing church for sale in the right place and at the right price, in 2000 Petra settled on property in Northbrook's Sky Harbor Industrial Park. Petra planned to convert an existing office building and warehouse into a church.

Sky Harbor lies in an area of Northbrook zoned I-1. Under the 1988 zoning code that was in effect at the time, I-1 zoning was reserved mainly for industrial uses, but also permitted membership organizations such as union halls, chambers of commerce and other organizations that would compliment area businesses. The I-1 zone specifically excluded use by religious organizations. Though use of the Sky Harbor property as a church was specifically excluded, and though the property was surrounded by manufacturing facilities such as a grinding and polishing business, a tool and die business, and a heating and air conditioning company, Petra decided that the property suited its needs.

In October 2000, Petra agreed to buy the Sky Harbor property for $2.9 million. The sales contract included a contingency clause that allowed Petra to back out if it was unable to obtain the rezoning it would need to operate a church. At the same time Petra applied for rezoning of the property to IB (institutional buildings), the only zone in which religious organizations were permitted.

Several months later the Northbrook Plan Commission held public hearings on Petra's application for rezoning. To alleviate concerns expressed by commissioners during the hearing, Petra supplemented its application with a list of 13 suggested conditions that it volunteered to follow in order to obtain rezoning. Despite the newly-suggested conditions, in April 2001 the Plan Commission recommended against rezoning.

The application was then presented to the Village Board. In May 2001 the Board asked its staff to prepare documents denying Petra's application for rezoning, deferring until its next meeting an actual vote on the application. But before the Board's next meeting, Petra withdrew its application and the Board never voted on it.

Having failed to obtain a rezoning, Petra exercised the zoning contingency clause and terminated its contract to buy the Sky Harbor property. However, within months it struck a new deal to buy the property, this time without a zoning contingency and for the discounted price of $2.6 million, $300,000 less than the original price. Petra completed its purchase in October 2001.

Petra filed this suit in March 2003 and sought a temporary restraining order preventing the village from enforcing its zoning code, claiming that the code violated the Equal Protection Clause, the Free Exercise Clause, the right to free speech, and the federal Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc. It later amended its complaint to add claims that the code violated the Establishment Clause, as well as state law claims of vested rights, legal nonconforming use, unreasonable classification and restraint, arbitrary or capricious restriction, and a claim under the Illinois Religious Freedom Restoration Act, 775 Ill. Comp. Stat. 35/15.

Although Petra's request for a temporary restraining order was immediately denied, two months later on May 4, 2003, it began conducting worship services at the Sky Harbor property. When the village discovered what Petra was doing, it notified Petra that it was violating Northbrook's building code by having too many people on its premises. On June 18, 2003, the village obtained a preliminary injunction from the Circuit Court of Cook County preventing

3

Petra from conducting worship services and limiting occupancy to 60 persons at all other times. By then, Petra had returned to its rented space in Glenview.

In the meantime Northbrook amended its zoning code in 2003 so that *all* membership organizations were excluded from I-1 zones, including the business-related organizations that under the 1988 version of the code were allowed. The village also opened up additional zones to religious organizations where they previously were not allowed. Religious organizations had been allowed only in the IB zone, but now were permitted as of right in two residential districts (R-1 and R-2), and in an additional 16 districts after obtaining a special permit.

Petra returned to federal court and attempted to get a preliminary injunction to prevent Northbrook from enforcing its zoning code, but that too was denied. The parties then filed motions for summary judgment. Northbrook filed a single motion seeking summary judgment on all of Petra's claims. Petra, on the other hand, filed a total of seven motions for partial summary judgment in a transparent effort to evade the page limitation. But because Petra's arguments are unpersuasive at any length, all of its motions are denied. Northbrook's motion, on the other hand, is granted as to all of Petra's federal claims. No federal claims remain after summary judgment, and therefore the court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

## DISCUSSION

1. **Summary Judgment Standard**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court may grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti*, 970 F.2d at 365; *Anderson*, 477 U.S. at 248.

Accordingly, the nonmoving party may withstand summary judgment only by showing that a dispute over a "genuine" material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

### 2. Constitutional Claims

#### a. Establishment Clause

The court turns first to Petra's Establishment Clause claim (Count XIII). In it, Petra alleges that under Northbrook's zoning code, Petra was required to meet several conditions in order to use its property as a church. The conditions allegedly included that (1) no more than ten people could occupy the property during weekdays, 60 people on weeknights, and 200 people on Sundays; (2) events such as weddings and baptisms were limited to six per year; and (3) Petra could not operate a school on the property. Petra contends that Northbrook subjected no other church to such conditions, and therefore it preferred other churches over Petra in violation of the Establishment Clause. *See Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (the

Establishment Clause prohibits the government from favoring one religion over another without a legitimate secular reason).

None of the conditions described above were ever imposed by the village. Instead, they were conditions that Petra suggested which were ultimately rejected by the Plan Commission before Petra withdrew its request for rezoning. None of the conditions are set forth in the village's zoning code, and therefore cannot be the basis for Petra's claim that the zoning code violates the Establishment Clause.

As for the 60-person occupancy limitation imposed by the Circuit Court of Cook County, which is similar to the occupancy condition that Petra suggested but that the Plan Commission rejected, an attack upon the state-court judgment may not be waged in federal district court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1526 (2005) ("losing party in state court" may not turn to federal district court "seeking review and rejection of that [state-court] judgment.").

### b. Other Constitutional Claims

Each of Petra's remaining constitutional claims—Equal Protection (Count I), Free Exercise (Counts III & IX), and Free Speech (Count V)—are based upon "the Northbrook zoning code before May 3, 2003," in other words the pre-amended, 1988 iteration of the code. Petra seeks both injunctive relief and money damages.

Petra's claims for injunctive relief are moot. The portion of the 1988 code about which Petra complains, specifically the provision that permitted non-religious groups to operate in the I-1 zone but excluded religious groups, has since been amended to treat religious groups and non-religious groups similarly. Because Petra claims only that the pre-amended code (not the

6

current code) violated the constitution, its claims are moot. *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 n.6 (7th Cir. 2003) (where amendments to zoning code placed similar restrictions on religious and nonreligious assembly uses, plaintiff's challenges to pre-amended version of code were moot).

Even though a plaintiff's attempt to enjoin the enforcement of a an out-of-date zoning code is moot, the plaintiff may nevertheless be entitled to recover damages suffered during the time the code was enforced in violation of the constitution. *See* 42 U.S.C. § 1983. However, claims for damages must be timely, as determined by the applicable statute of limitations of the state in which the violation took place. *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 699-700 (7th Cir. 2005) ("For §§ 1983 and 1985 claims, the statute of limitations is determined by the law of the state in which the violation took place."). The applicable Illinois limitation is two years for personal injuries. *See* 725 Ill. Comp. Stat. 5/13-202 (personal injury statute of limitations); *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (§ 1983 claims in Illinois are governed by a two-year limitations period). Therefore, a § 1983 claim is timely only if filed within two years of when the "plaintiff [knew] or should [have known] that his or her constitutional rights have been violated." *Behavioral Institute of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005).

The parties disagree when Petra knew or should have known about its injury, and thus when the limitations period began to run. The village contends that it began to run on December 20, 2000, the day that Petra filed its application for rezoning. According to the village, Petra knew at least by then that the code distinguished between religious and nonreligious assemblies in the I-1 zone. Petra contends that it began to run much later, specifically when the village

7

Board directed staff members on May 8, 2001, to prepare documents denying Petra's application for rezoning.

The Seventh Circuit recently examined when the statute of limitations begins to run for claims arising from allegedly illegal zoning codes. In *Hoagland v. Town of Clear Lake, Ind.*, the plaintiff wanted to operate a helicopter and landing pad on his property. *Hoagland*, 415 F.3d at 695-96. His town's zoning code was initially silent on the issue of landing pads, but the town eventually amended its code to allow landing pads only if the owner first obtained a special use permit. *Id.* at 696.

Significantly, the Seventh Circuit did *not* conclude that the limitation period began to run only after the plaintiff tried and failed to obtain a special use permit—in fact, the court never discusses in its review of relevant facts whether the owner ever even attempted to obtain a permit. Instead, the court held that the limitations period began to run when the plaintiff should have first known that the code was illegal, *i.e.*, when the town attempted to regulate landing pads by amending its zoning code. *Id.* at 700. Because the plaintiff filed its claims more than two years after the town amended its code, the claims were untimely. *Id.*

Petra attempts to distinguish *Hoagland* by arguing that it was first injured when the Board failed to grant its request for rezoning in May 2001—it insists that the 1988 code itself caused it no injury. Therefore, Petra concludes, its claims are timely because they were filed within two years of May 2001. However, the request that the Board failed to act upon in May 2001 was Petra's request that its property be *rezoned to IB*, not that it be allowed to conduct religious assemblies *within the I-1 zone*. Petra has offered no evidence or argument that it was entitled under the constitution to a *rezoning* to IB in May 2001, and therefore the statute of

8

limitations could not have started running on that date. Petra's only potentially viable constitutional claim is one based upon the 1988 code's allegedly unconstitutional treatment of religious assemblies within the I-1 zone. Accordingly, the limitations period began running when Petra knew about the constitutional infirmity in December 2000, more than two years before it filed suit.

### 3. RLUIPA

The Protection of Religious Exercise in Land Use and by Institutionalized Persons Act prohibits governments from, among other things, imposing land use regulations that (1) substantially burden religious exercise, *see* 42 U.S.C. § 2000cc(a); (2) treat religious assemblies less favorably than nonreligious assemblies, *see id.* § 2000cc(b)(1); or (3) unreasonably limit or totally exclude religious assemblies, *see id.* § 2000cc(b)(3). Petra contends that the 1988 version of Northbrook's zoning code treated religious assemblies less favorably and therefore violated § 2000cc(b)(1); that the village's refusal to let Petra operate a church in the I-1 zone substantially burdens it in violation of § 2000cc(a); and because no other suitable land is available anywhere in Northbrook, that the village has totally excluded Petra in violation of § 2000cc(b)(3).

#### a. Substantial Burden / Total Exclusion

According to Northbrook's director of development, land within the two zones where churches are allowed without a permit, the R-1 and R-2 zones, is "basically built up." Therefore, obtaining enough land to build a new church has traditionally required buying several adjacent lots with existing homes. Petra contends that the fact that Northbrook's residential zones are basically built-up, combined with the fact that churches cannot operate within the city's

9

industrial zones, means that Petra is not only substantially burdened, but is also totally excluded from locating in Northbrook.

Petra's argument fails to account for other areas of Northbrook where churches are allowed. For instance, Petra points to no evidence about the availability of land in the 16 non-residential districts, including commercial districts where churches are allowed with a permit. On the other hand, according to the parties' agreed facts, under the 1988 code ten of the eleven churches that attempted to locate in Northbrook succeeded (only Petra failed, after withdrawing its rezoning request). With the 2003 amendments Northbrook opened up even more land to churches so that now "70% of land in Northbrook is located in zoning districts where Religious Organizations may locate either as of right or by way of a Special Permit."

Nothing in the RLUIPA entitles Petra to establish a church anywhere it wants. The fact that Northbrook's zoning code requires it to locate somewhere other than an industrial park is not a substantial burden, let alone a total exclusion. *See Civil Liberties*, 342 F.3d at 761-62 (scarcity of land in urban areas does not require municipality to "favor [churches] in the form of an outright exemption of land-use regulations").

Petra's reliance on *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005), is unpersuasive. In *New Berlin*, the Seventh Circuit held that the defendant had created a substantial burden by requiring a church to "search[] around for other parcels of land," rather than rezoning property the church already owned. *Id.* at 901. But in *New Berlin*, the city had only one legitimate reason for not granting the rezoning—the city was worried that if the property were rezoned a subsequent owner might build a school or other non-religious facility—and the church had agreed to a restrictive covenant prohibiting that. *Id.*

at 900-01. In contrast, Petra has offered no evidence that it has satisfied Northbrook's legitimate concerns about allowing a church in an industrial park. In fact, Petra agrees that Northbrook's decision to prohibit *all* assembly uses in its industrial zones "is rationally related to several important planning principles, including reduction in actual and potential land use conflicts, and preservation of industrial land."

### b. Less Favorable Treatment

Although the RLUIPA prohibits governments from treating religious assemblies less favorably, a government "may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise." 42 U.S.C. § 2000cc-3(e). Although the statute refers to policies that result in substantial burdens, the Seventh Circuit has held that governments may also avoid liability for violations of the nondiscrimination provision of the RLUIPA by eliminating the discriminatory policy. *Civil Liberties*, 342 F.3d at 762. The parties agree that the 2003 amendments to Northbrook's zoning ordinance put nonreligious assemblies on equal footing with religious assemblies. Accordingly, Northbrook has avoided liability by eliminating its discriminatory zoning provision.

### 4. State Law Claims

Petra alleges several state law claims, including that because Northbrook's 1988 zoning code was unconstitutional and therefore void, it was entitled to operate a church when it bought the property in 2001, and under state law theories of vested rights and legal nonconforming use, remains able to operate a church on the property even after the 2003 amendments to the zoning code.

When all federal claims have been dismissed from a plaintiff's case, a district court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Accordingly, in its discretion the court believes that Petra's state law claims would be better evaluated in state court, and therefore declines to exercise supplemental jurisdiction over those claims. *Id.*

## CONCLUSION

For the preceding reasons, the court GRANTS Northbrook's motion for summary judgment [113-1] on each of Petra's federal claims (Counts I, II, III, IV, V, IX, XII and XIII). Because no federal claim remains, the court declines to exercise supplemental jurisdiction over the remaining state law claims (Counts VI, VII, VIII, X and XI). Further, the court DENIES each of Petra's motions for partial summary judgment [120-1], [121-1], [122-1], [123-1], [124-1], [125-1], and [126-1].

ENTER:

DATE: January 11, 2006

*Blanche M. Manning*
Blanche M. Manning
United States District Judge